IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 4, 2018

## STATE OF TENNESSEE v. RICHARD SHANE FRAZIER

**Appeal from the Circuit Court for Madison County**
No. 17-326      Donald H. Allen, Judge

_____

### No. W2018-00225-CCA-R3-CD

_____

A Madison County jury convicted the Defendant, Richard Shane Frazier, of aggravated assault and violating an Order of Protection.   The trial court sentenced the Defendant to an effective sentence of fifteen years to be served consecutively to previous sentences for other convictions.   On appeal, the Defendant claims that the evidence is insufficient to sustain his conviction for aggravated assault.   After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory Doyle Gookin, Jackson, Tennessee, for the appellant, Richard Shane Frazier.

Herbert H. Slattery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General for the appellee, State of Tennessee.

### OPINION

This case arises from the Defendant threatening to kill his ex-wife, the victim, who had previously obtained an Order of Protection against the Defendant requiring him to stay away from her.   For these offenses, a Madison County grand jury indicted the Defendant for aggravated assault and violating an Order of Protection.

### I. Facts

At the Defendant's trial on these charges, the parties presented the following evidence: The victim testified that she was married to the Defendant from 2009 until 2016

when they were divorced. On January 28, 2017, the victim was at a friend's house where she stayed until after dark. The victim left the house with her boyfriend, Eddie Preslar,[1] and her daughter. The victim stated that, at the time, she had an Order of Protection against the Defendant, which she had obtained in September 2016. The Order of Protection was entered into the record as evidence.

The victim said that as Eddie was backing the victim's vehicle out of the driveway, another vehicle pulled in behind her vehicle, blocking it from leaving. The victim assumed the vehicle belonged to someone acquainted with the homeowner, so she told Eddie to pull forward to allow the vehicle to access the driveway. All the victim could see were the vehicle's headlights. A person got out of the vehicle and ran to the victim's car window, at which point she realized the person was the Defendant. The Defendant was "yelling and cussing" and banging on the car window. The Defendant yelled, "I'm going to kill you, bitch." The victim was "scared to death" and crying "hysterically." Her daughter also appeared scared. Eddie opened his driver's side door and asked the Defendant to come talk to him in an attempt to "detour" the Defendant away from the victim. The Defendant went around to Eddie's side of the vehicle, and the two men "got into it." The victim began honking the horn to attract attention. A female got out of the Defendant's vehicle and other individuals came out of the house.

The bystanders managed to get the Defendant away from the vehicle, but the victim could not remember how. She attended to her "hysterical" daughter and was herself "hysterical." At some point the victim looked out of the car window and saw the Defendant try to run over Eddie with the Defendant's truck. Eddie was lying on the ground in a fetal position. The victim never saw a gun, but she heard gunshots and told her daughter to run into the house. The Defendant got into his truck and pulled out of the driveway, only to turn back around and drive towards the victim "like he was going to run [her] down." Eddie's son tried to get the keys out of the Defendant's truck but the Defendant then drove away from the scene.

The victim stated that she had been scared that the Defendant was going to kill her. She testified that she had obtained the Order of Protection against the Defendant because he was showing up at the victim's parents' house, at places she was shopping, and at friend's houses. She testified that his rage towards her had gotten "out of control." The Defendant would call or send text messages to the victim from different numbers daily. The victim asked him to stop contacting her. The victim asked friends not to post photos of her on social media because she did not want the Defendant to know where she was. The victim assumed that the Defendant left the scene the night of the assault because someone had called the police.

---

[1]For clarity we will refer to Mr. Preslar and his son, Seth Preslar, who is also a witness, by their first names.

On cross-examination, the victim said that the Defendant harassed her daily and followed her many places. He also attempted to contact her by phone or text message daily, despite the Order of Protection. The victim sometimes contacted the police about the harassment but not always. The victim stated that, on the day of the assault, she believed that it was the Defendant's intention to kill her or hurt her.

Eddie Preslar testified that he was with the victim on January 28, 2017. The two had been dating since July of 2016. They were playing board games at the home of the victim's friend; the victim's daughter was also in attendance. Lots of children were present at the home, and the group shared supper and spent the evening together. At some point between 10 p.m. and midnight, Eddie, the victim, and the victim's daughter attempted to leave the party; Eddie stated that the victim's daughter was fifteen years old at the time. They got into the victim's vehicle with Eddie driving and the victim in the passenger seat while her daughter sat in the backseat on the passenger side. As Eddie backed out of the driveway, another vehicle pulled in behind, blocking him. The victim and her daughter both said it was the Defendant, and the daughter started screaming. The Defendant went to the passenger side window and started beating on the window and screaming. The victim appeared scared. Eddie got out of the vehicle and began talking to the Defendant, and the situation escalated from there. The Defendant came around to Eddie's side of the vehicle, followed by the victim, who was telling the Defendant to leave. The Defendant said, "Do you want to get shot?" and "I'm just going to shoot y'all." Eddie was not armed and went into "self defense mode" at that point. He and the Defendant began fighting, and Eddie was able to get the Defendant on the ground and told him to leave. At this point, people had come out of the house including "a bunch of little young kids."

Eddie testified that the Defendant got back into his truck, and they continued their scuffle inside the truck with Eddie trying to take the Defendant's keys. At some point, the Defendant jolted the truck by slamming on the brakes, causing Eddie to fall out, at which point the Defendant tried to run over Eddie; Eddie rolled out of the way, but the Defendant succeeded in running over Eddie's right foot. Eddie then heard two gunshots and saw a flash on the ground; he never saw a gun.

Seth Preslar, Eddie's son, testified that he was also at the party that evening. At the time he was employed as a police officer although he was off duty that evening. Seth testified to the same version of events as his father. He stated that Eddie gave the Defendant "numerous opportunities" to leave the scene, and the Defendant continued the altercation. Seth clarified that, at some point after Eddie's altercation with the Defendant, the Defendant reversed his vehicle up the driveway towards the street. He then abruptly put the vehicle into drive and began racing towards Eddie. Seth knew by the Defendant's

high rate of speed that he intended to strike somebody with the vehicle. The Defendant again put the vehicle in reverse, and at this point, Seth thought it would not be a good idea for the Defendant to leave, so Seth tried to stop the Defendant from leaving in his vehicle. Seth testified that he did not hear any gunshots but that, in his experience as a law enforcement officer, not hearing a gunshot would be normal in a high stress situation such as this one.

Patrick Clayton, Chief of Police in Trimble, Tennessee, testified that he was employed with the Madison County Sheriff's Department at the time of this incident, and in charge of answering calls to the department. He received a "shots fired" call on January 28, 2017, at the home of the victim's friend. Chief Clayton responded to the residence, where he came into contact with the victim, Eddie, and Seth. He verified the existence of the Order of Protection. Chief Clayton then went to the Defendant's house where officers took the Defendant into custody.

The jury convicted the Defendant of aggravated assault and violating an Order of Protection. The trial court sentenced the Defendant to an effective sentence of fifteen years to be served consecutively to previous sentences for other unrelated convictions. It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal, the Defendant contends that the evidence was insufficient to support his conviction for aggravated assault because of the inconsistent testimony about the presence of a gun at the scene and the varying accounts of what occurred. The State responds that the jury resolved the inconsistencies by its verdict and that the State provided sufficient evidence of aggravated assault. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and

4

inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

As relevant to this case, "a person commits aggravated assault who, after having been . . . restrained by an order . . . from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or

5

commits or attempts to commit an assault against the individual . . . . T.C.A. § 39-13-102(c) (2014). A person commits assault who "intentionally or knowingly causes another to reasonably fear imminent bodily injury." T.C.A. § 39-13-101(a)(2).

We conclude that the evidence, viewed in the light most favorable to the State, was sufficient for a rational trier of fact to find the Defendant's conduct constituted an aggravated assault. The victim had obtained an Order of Protection against the Defendant, prohibiting the Defendant from contacting her or going to her home or workplace. The order remained in effect on January 28, 2017, the date on which the Defendant showed up at the victim's friend's home where the victim was visiting. There, the Defendant approached the victim's car and, while she remained inside, he screamed at and threatened to kill her while banging on the window of her car. The victim stated that she believed the Defendant would kill or harm her. This is sufficient evidence from which a jury could find beyond a reasonable doubt that the Defendant was guilty of aggravated assault in accordance with section 39-13-102(c). Accordingly, the Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE